```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                        :
UNITED STATES OF AMERICA                              25 Cr. 271 (CS)
                                        :
    - v. -
                                        :
JAMES NEFF
                                        :
---------------------------------------X
                        SENTENCING SUBMISSION
```

Dated:   White Plains, New York
         October 7, 2025

                                    Federal Defenders of New York
                                    Benjamin Gold
                                    Attorney for James Neff
                                    81 Main Street
                                    White Plains, NY  10601
                                    (914) 428-7124

To:  The Honorable Cathy Seibel
     United States District Judge
     Southern District of New York

cc:  Jay Clayton, Esq.
     United States Attorney
     Southern District of New York
     One St. Andrews's Place
     New York, New York
     Attn:  Justin L. Brooke
     Assistant United States Attorney

**Federal Defenders**
OF NEW YORK, INC.

Southern District
81 Main Street, Suite 124
White Plains, NY 10601
Tel: (914) 428-7124 Fax: (914) 948-5109

Tamara L. Giwa
*Executive Director*

Jennifer L. Brown
*Attorney-in-Charge*

October 7, 2025

The Honorable Cathy Seibel
U.S. District Court Judge
Southern District of New York
300 Quarropas Street
White Plains, New York  10601

Re:    *United States v. James Neff,* 25 Cr. 271

Dear Honorable Seibel:

At sixty-four years old, while isolated and incarcerated at the Westchester County Jail, James Neff (herein Mr. Neff) finally began to understand why, throughout his life, he seemed so different than others.  Mr. Neff had just been evaluated by a psychologist and Mr. Neff learned, for the first time in his life, that he is on the autism spectrum and that he has a hoarding disorder.  Suddenly, Mr. Neff's life situation – his difficulty connecting with others, the fact that he's never had a romantic partner and lived with his parents well into his 60s, his hoarding tendencies and his preoccupation with machines and firearms – made much more sense.  Armed with this new knowledge, Mr. Neff began to share the news, and to talk about getting help.  He wrote longtime friends of his parents a letter, informed them of the new diagnosis, expressed acceptance that he needs help, and lamented "Too bad I didn't hear that 30 years ago.  Then perhaps I'd have a wife and kids instead of guns."  David and Mary Huston Letter (Exhibit A).

Similarly, in his letter to Your Honor, Mr. Neff expressed sadness that he hadn't learned of his diagnoses earlier because "Then I would have asked what should be done."  James Neff Letter (Exhibit B).  But unlike many people in their sixties, Mr. Neff desperately wants to change.  Mr. Neff explains,

> I think I would need some sort of professional to help me understand my shortcomings in social fields and fixations.  I would like to learn more about autism and hoarding.  I would like to read and study more.  My resources are extremely limited in jail.  I have always felt different, and people generally that about me, you're different.  It would be nice to have a deeper understanding of why.  If I could socially properly and had friends I would be with them instead of being home alone fixated on guns and

>ammunition. I would be interested in learning where I can socialize to find people who are interested in computers and mechanics, people who build bikes and motorcycles. I love the beach, I walk on the sand and boardwalks. I want to shift my focus to those interests and leave guns behind. You see I have plenty of other interests, I don't need to get back to guns and I won't…. I want to learn how to socialize, make friends, and better adjust.
>
>James Neff Letter (Exhibit B).

In light of Mr. Neff's desire to improve himself, and the reality that Mr. Neff had no plan to use the guns and contraband that he possessed, the Court should impose a sentence of less than 42-months of incarceration.

Mr. Neff's Childhood

Mr. Neff was born on August 1, 1962 in Queens, New York.[1] PSR P. 2, ¶ 38. He was raised by his mother, Barbara Hoskins Neff, and father, Gregor Neff. *Id.* ¶ 38. Mr. Neff had two brothers and felt loved and supported by his family. *Id.* ¶ 39, 42, 44. He grew up primarily in Dobbs Ferry, where he was quiet and frequently bullied. *Id.* ¶ 40, 44, 56. A friend of Mr. Neff's younger brother recalls that, as a child, Mr. Neff was different from other boys, was fascinated with engines, and "always had an interest and connection with mechanical objects." Rolf Svenesson Letter (Exhibit C). Mr. Neff graduated from Dobbs Ferry High School in 1980 and then attended college at SUNY Delhi. *Id.* ¶ 56, 57. In 1981, when Mr. Neff was an eighteen-year-old freshman at the college, Mr. Neff got in trouble after he, as a prank, damaged a glass door at the college. *Id.* ¶ 30, 57. Mr. Neff was charged with criminal mischief, an offense that involves intentionally causing more than $250 in damages to another person's property.[2]

Adult Years

---

[1] Paragraph 38 of the PSR contains a typographical error in relation to Mr. Neff's birthdate. It reads that Mr. Neff was born on August 1, 2962. While Page 2 of the PSR has the correct date, I ask that the Court please instruct Probation to modify Paragraph 38 to indicate that Mr. Neff was born on August 1, 1962.

[2] NYPL § 145.05(1) involves damaging motor vehicles and NYPL § 145.05(2) involves damaging "property of another person in an amount exceeding two hundred fifty dollars."

After his expulsion from SUNY Delhi, Mr. Neff pleaded guilty to intentionally damaging property that belonged to the University and was sentenced to probation with youthful offender status. *Id.* ¶ 30. Mr. Neff returned home, completed probation and mandatory counseling, and later attended SUNY Farmingdale and Westchester Community College. *Id.* ¶ 51, 58-59. Mr. Neff did well at Westchester Community College and graduated with an associate's degree and several professional certificates. *Id.*

Mr. Neff, who returned home from SUNY Delhi in 1981 at the age of eighteen, spent the next twenty years living with his parents and his younger brother in his childhood home in Dobbs Ferry. *Id.* ¶ 46. As an adult, Mr. Neff had very few friends and spent most of his time working. *Id.* ¶ 47. At his home, Mr. Neff hoarded items, including newspapers, boxes, and old flyers from church. *Id.* ¶ 44. Mr. Neff, who has a lifelong interest in weapons, also collected firearms. Law enforcement discovered this in September of 2000 when, during an investigation into a burglary at Mr. Neff's home, Mr. Neff admitted to having unlicensed firearms. *Id.* ¶ 31. The police went to Mr. Neff's home and recovered more than 130 unlicensed guns. *Id.* Mr. Neff was arrested and, following a guilty plea, was sentenced to five-years in prison. *Id.* Mr. Neff – who was thirty-eight when he was arrested – was released in 2004 at the age of forty-two. *Id.*

After his release from state prison, Mr. Neff excelled on parole supervision. *Id.* In terms of employment, shortly after his release from state prison in 2004, Mr. Neff found work at Tri Technologies, a manufacturing company based in Mount Vernon, New York. *Id.* ¶ 60. Mr. Neff worked continuously at Tri Technologies for the next 20-years. *Id.* ¶ 60. David Hirsch, the owner of Tri Technologies, describes Mr. Neff as an excellent and dedicated employe. *Id.* In a letter to the Court, Mr. Hirsch states,

> I would absolutely hire him back. I trust him around my business and employees. He was always a good reliable employee. Throughout his employment James always arrived on time and stayed late when needed. He was reliable as well as a conscientious employee. He was always willing to help even with tasks that were not his specific job responsibilities. For example, if our driver was sick James would deliver and/or pick up purchase orders/parts from our suppliers. Our suppliers are located throughout the tri-state area therefore due to traffic and unforeseen circumstances he would return to the shop as late as 7:00pm not once di he complain. Another example, James, if asked would arrive at work earlier than his start time if a specific task needed to be done for a job to

>be completed. He would start as early as 6:45am. He
>never once exhibited a violent temperament throughout
>his entire employment.
>
>David Hirsch Letter (Exhibit D).

Although Mr. Neff had steady employment at Tri Technologies through his 40s, 50s and the beginning of his 60s, he continued to live at home with his parents and brother. PSR ¶ 46.[3] During this period, Mr. Neff's father describes Mr. Neff as "a hardworking, reliable individual who took little time off of work, was a loner, and had very few friends." *Id.* ¶ 47. Mr. Neff's boss at Tri Technologies expressed a similar sentiment, explaining "I think he was a loner . . . and did not associate to[o] much with coworkers," David Hirsch Letter (Exhibit D), as did a longtime friend of Mr. Neff's parents, who explained that Mr. Neff had confided in them that "he has just two friends, both on the internet." Mary and David Hutson Letter (Exhibit A).

The Offense Conduct, Plea and Guidelines

While living and working peacefully in Westchester County, Mr. Neff had a secret: he continued to acquire and possess firearms, as well as gunpowder (smokeless powder) and books regarding explosives. Mr. Neff stored the firearms, ammunition and gunpowder at a storage unit in Pennsylvania and kept some ammunition and cartridges at a storage unit in Mount Vernon.[4] PSR ¶ 6-7. Law enforcement discovered Mr. Nefff's secret and arrested Mr. Neff on May 1, 2024. *Id.* ¶ 11. After his arrest Mr. Neff agreed to talk to the authorities and he admitted that he had possessed the firearms and transported them from Westchester to his storage unit in Pennsylvania. *Id.* ¶ 11. In total, Mr. Neff had 32 firearms. *Id.*

On June 12, 2025, after waiving indictment and agreeing to be prosecuted by information, Mr. Neff pled guilty. *Id.* ¶ 1. Under the Guidelines, Mr. Neff faces sentencing enhancements pursuant to USSG §§ 2K2.1(a)(3) and 2K2.1(b)(3)(B) because explosive materials recovered in the storage unit could be converted into a destructive device. *Id.* ¶ 17, 19. Mr. Neff also faces an enhancement based on the number of firearms possessed (USSG § 2K2.1(a)(3)), because one of the firearms was not marked with a serial number (USSG § 2K2.1), and because of Mr. Neff's prior conviction (USSG § 2K2.1(a)(3)). *Id.* ¶ 18, 20. Because of these enhancements, Mr. Neff's Guidelines are 70 to 87 months.

---

[3] Sadly, Mr. Neff's mother died in 2022 due to complications from COVID-19. PSR ¶ 39.

[4] Law enforcement also recovered a two firearm cartridges at his home in Dobbs Ferry. PSR ¶ 7.

Mr. Neff's Psychological Evaluation

In order to help identify whether Mr. Neff has any mental health features that could help explain Mr. Neff's conduct and reduce recidivism, Mr. Neff was evaluated by Bryan Stuart, PsyD, a clinical psychologist who specializes in forensic evaluations. Dr. Stuart has evaluated Mr. Neff and opined that he is on the autism spectrum and that Mr. Neff possesses a hoarding disorder. *See* Bryan Stuart, PsyD Evaluation (Exhibit E).[5] Dr. Stuart explained that Mr. Neff's "persistent deficits in social communication and interaction," his "deficits in developing, maintaining, and understanding relationship" and his "restrictive and repetitive patterns of behavior, interest and activities," combined with Mr. Neff's "perceived need to save items and [his] distress associated with discarding them" help explain why Mr. Neff has stockpiled weapons. *Id.* In order to help Mr. Neff move beyond and avoid firearms in the future, Dr. Stuart recommends that Mr. Neff receive mental health treatment "including therapy to help him understand and manage problematic behaviors, particularly those related to his restricted interests, difficulty with social interaction, and hoarding tendencies." *Id.* Dr. Stuart also recommends that Mr. Neff receive Cognitive Behavioral Therapy (CBT), with an emphasis on addressing compulsive behaviors like hoarding, and social skills training," and therapy designed to minimize social isolation and help Mr. Neff learn how to better foster relationships with others. *Id.*

### *The Most Appropriate Sentence: 42 Months*

"A sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime. *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc). In exercising the discretion, the Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)," which requires the Court to "'impose a sentence sufficient, but not greater than necessary, to comply with the' the factors set out in 18 U.S.C. § 3553(a)(2): "proportionality, deterrence, incapacitation, and rehabilitation." *United States v. Douglas*, 713 F.3d 694, 700 (2d Cir. 2013) (quoting *United States v. Dorvee*, 616 F.3d 174, 183 (2d Cir. 2010). As the Second Circuit has explained, if the District Court believes a lower sentence will be as effective as a higher sentence in advancing the purposes of sentencing, "it must choose the lower sentence." *United States v. Pugh*, 945 F.3d 9, 28 (2d Cir. 2019) (citing *United States v. Ministro-Tapia,* 470 F.3d 137, 142 (2d Cir. 2006)). In determining the proper sentence to impose, the Court must "consider every convicted person as an individual," and its sentence must "fit the offender and

---

[5] A copy of Dr. Stuart's CV is attached as Exhibit F. In light of the nature of this psychological evaluation, I am requesting permission to file it (Exhibit E) under seal.

not merely the crime." *Pepper v. United States,* 562 U.S. 476, 487-88 (2011) (internal citations omitted).

With this in mind, a sentence of more than 42-months would be "greater than necessary." This is because Mr. Neff's conduct, while unlawful, was not based on a desire to cause harm and because Mr. Neff's history and characteristics are mitigating and show that he is not a risk to the community.

A.  <u>The nature and circumstances of Mr. Neff's firearms possession do not compel a sentence more than 42-months.</u>

Mr. Neff has been interested in firearms and explosives ever since he was a child. He has never used a firearm or an explosive to hurt someone. Nor was he planning to use the weapons to cause harm or property damage. Instead, he is a collector who kept firearms and related material in locked storage units. This, of course, was unlawful and is not a defense to his crimes. But, when formulating a sentence, the Court should recognize that Mr. Neff did not possess weapons with a plan or desire to hurt others. Similarly, he did not possess weapons with an intent to damage property. Section 3553(a)(1) mandates that the Court impose a sentence that is consistent with the specific "nature and circumstances" of the offense, and Mr. Neff's possessory offense – which involved having dangerous weapons locked in storage – do not compel a lengthy punishment. *See United States v. Visser*, 611 F. Supp 2d 907, 917 (N.D. Iowa, 2009) (Sentencing felon in possession of firearms to probation because "I find that [the defendant's] possession of the firearms was as near 'innocent' possession, that is, as near possession 'solely' for sporting and collecting purposes, as one can get."). As such, the Court should not impose a sentence greater than 36-monhts.

B.  <u>Mr. Neff's history and characteristics, including his tremendous work history and his need for treatment, justify leniency.</u>

Mr. Neff grew up in a loving home but, socially, he felt isolated and lonely. PSR ¶ 44, 47, 56. In high school, Mr. Neff was voted the "quietest boy," and Mr. Neff was described as a loner without friends. *Id.* ¶ 47, 56. David and Mary Huston, long-term friends of Mr. Neff's parents, recall Mr. Neff as "shy" and as someone who "didn't interact with many people." David and Mary Huston Letter (Exhibit A). Decades later, Mr. Neff's boss of twenty years would note that Mr. Neff "was a loner" who "did not associate" this his colleagues. David Hirsch Letter (Exhibit D).

Despite his isolation, people who know Mr. Neff stress that he is kind and

is never violent. Rolf Svensson, a close friend of Mr. Neff's older brother who watched Mr. Neff grow up and stayed in touch with him through the years, notes that he's "never witnessed Jim [Neff] act malicious or hurt a living creature. He's not an 'angry' person, doesn't hunt and has always been kind to others. I doubt he's ever even shot a squirrel or a bird." Rolf Svensson Letter (Exhibit C). Mr. Neff's father adds, "James is, and to my knowledge always has been, a peaceable and helpful man. As far as I know, he has not fought with or had significant altercations with others. In fact, I believe that he goes out of his way to avoid essentially all such conflicts." Gregor Neff Letter (Exhibit G). *See also* David Hirsch Letter (Exhibit D) ("He never once exhibited a violent temperament throughout his entire employment").

Additionally, Mr. Neff is generous to his family. Gregor Neff recalls how after his wife died, Mr. Neff volunteered to use his vacation time to take his father on vacation to visit family in Wisconsin. Gregor Neff Letter (Exhibit G). Similarly, prior to his arrest Mr. Neff provided assistance to both his father and his younger brother, who, due to his own mental health issues, often needs assistance. *See* James Neff Letter (Exhibit B) and Rolf Svensson Letter (Exhibit C).

Finally, Mr. Neff is a dedicated, loyal worker who has spent nearly two decades working hard for a local business. *See* David Hirsch Letter (Exhibit D).

For these reasons, and because Mr. Neff is remorseful, a sentence more than 42 months would be excessive.

### C. The requested sentence would provide ample deterrence and respect for the law.

Regarding general deterrence, a sentence of 30, 40, or 42, months is a long period of time and would provide ample general deterrence. This is because there is increasing consensus that longer sentences do not have greater deterrent value, and that deterrence stems from the certainty of prosecution rather than the length of a sentence. Three separate National Academy of Science panels have concluded, and empirical data has demonstrated, that "increases in severity of punishment do not yield significant (if any) marginal deterrent effects."[6] Indeed, the Department of Justice itself, through its National Institute of Justice, has noted that the "certainty of being caught is a vastly more powerful deterrent than the punishment"

---

[6] M. Tonry, Purposes and Functions of Sentencing, 34 CRIME & JUST. 1, 28 (2006).

itself, and "[i]ncreasing the severity of punishment does little to deter crime."[7] Put another way, Mr. Neff's immediate arrest, detention and subsequent incarceration for more than two-years provides more than sufficient deterrence to individuals who are thinking about unlawfully possessing (but not using) firearms.

In terms of specific deterrence, Mr. Neff is now sixty-three years old. This fact, alone, suggests that Mr. Neff is unlikely to reoffend. According to the Sentencing Commission, "As offenders' age at sentencing increased, recidivism rates decreased" and "Recidivism events for older offenders were less serious, compared to offenders under the age of 50". *Older Offenders in the Federal System*, United States Sentencing Commission, July, 2022.[8] Additionally, Mr. Neff's remorse and his understanding of how his own isolation and mental health condition impacted his actions has provided Mr. Neff with insight that further lowers his recidivism risk. In his letter to Your Honor, Mr. Neff explains that meeting with Dr. Stuart and realizing that he is autistic and has hoarding tendencies has been eye opening. James Neff Letter (Exhibit B). Mr. Neff explains, "it never occurred to me to think about autism for myself," "I wish my parents had hired [Dr. Stuart] 30, 40 years [ago]. . . at 63 it's late to start helping a problem. . . . I would like to learn more about autism and hoarding. . . . I have always felt different, and people generally say that about me. . . . It would be nice to have a deeper understanding of why. If I could socialize properly and had friends I would be with them instead of being home alone fixated on guns and ammunition." *Id.*

Clearly, Mr. Neff is motivated to receive treatment and to better himself. *See* David and Mary Huston Letter (Exhibit A) ("In a recent letter to us, Jim wrote that a psychologist had interviewed him extensively and found that he suffered from autism, which was reflected in his obsession with guns and hoarding behavior. He accepts that he has a psychological problem and regrets that it wasn't identified and addressed earlier in his life. He writes: 'Too bad I didn't hear that 30 years ago. Then perhaps I'd have a wife and kids in stead of guns.'"). Because of this, and Mr. Neff's remorse, a sentence of more than 42 months would be more than is necessary.

Finally, a sentence with minimal incarceration followed by supervision and mandatory therapy and treatment, would comport with section 3553(a)(2)(D)'s mandate that the Court impose a sentence that takes into account a defendant's

---

[7] National Institute of Justice, "Five Things About Deterrence," June 5, 2016, https://nij.ojp.gov/topics/articles/five-things-about-deterrence (last accessed on October 6, 2025).

[8] Available online at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220726_Older-Offenders.pdf (last assessed on October 6, 2025).

US v. James Neff (25 Cr 271)　　　　　　　　　　　　　　　　　　　October 7, 2025
Sentencing Submission　　　　　　　　　　　　　　　　　　　　　　　　Page 9

medical needs and correctional needs.  Such a sentence would also be consistent with the law's recognition that "imprisonment is not an appropriate means of promoting correction and rehabilitation."  18 U.S.C. § 3582.

*　　*　　*

　　　A sentence of more than 42 months is unnecessary and would conflict with the mandate that the Court impose a sentence "sufficient, but not greater than necessary."  18 U.S.C. § 3553(a).  For the reasons stated above, and especially in light of Mr. Neff's remorse and his desire to get treatment and therapy, for the first time in his life, I ask that Your Honor impose a sentence far below the applicable Guidelines.

　　　　　　　　　　　　　　　　　　　Respectfully,

　　　　　　　　　　　　　　　　　　　//s

　　　　　　　　　　　　　　　　　　　Benjamin Gold
　　　　　　　　　　　　　　　　　　　Assistant Federal Defender


cc:　　Assistant U.S. Attorney Justin L. Brooke